is a recidivist, perpetrator of major frauds, and a sentence that does not include a term of incarceration is clearly unreasonable. Unlike the defendant in United States v. Manyweather, Mr. Edwards was familiar with the criminal justice system. He'd been convicted of a theft offense in Arizona State Court in the early 1990s. It was the result of a crime that occurred during the savings and loan crisis. And as a result, he spent two days in jail, and he owed the FDIC in excess of $3 million in a restitution judgment. But clearly, that did not provide any specific deterrence to him. He moved to Montana and, within six years, had not only made false statements to banks, but he had concealed the fact that he had trust During the course of the bankruptcy, he had concealed the fact from the trustee that he owned stock options that had become very valuable. And, in fact, during the course of the bankruptcy, he had in excess of $400,000 worth of value. On that record, we had an initial sentencing hearing in 2004. The government argued at the time of that sentencing hearing that the 3553A factors were significant and needed to be considered. The government also argued that anything below the low end of the guideline range would be an inadequate sentence. And the low end of the guideline range, as calculated by the government at that time, was 27 months. At the time of the original sentencing, Booker hadn't been handed down. Correct. But Blakely had, and the three-judge panel in Ameline had issued its opinion. Yes. This is a pre-Blakely plea change, a post-Blakely, pre-Booker sentencing. Right. But the government argued, although at that point, Booker was unknown So you were unhappy with the sentence that was imposed? No. You weren't? I was not happy with the sentence that was imposed. That's what I said. You were not happy with the sentence that was imposed, correct? Very unhappy. And you appealed to the Ninth Circuit. I did not. And we remanded it under the then-existing Ameline en banc opinion. Correct. Didn't we do that? You did, but the And the judge said, well, you know, now, knowing that the guidelines are advisory, look at the record, I wouldn't change my sentence. First thing I did. Okay. Now you're back up here again on that. So this is the third time. So let me ask you this. You know, it's unfortunate that some of these we have a number of cases that are all tripped up in this remand and whatnot, and this appears to be one of them. But we have a recent case called Combs. Correct. How does that – what's your perspective on how that ought to fit in here? Well, the first thing I want to say about Combs is that the language on 1295, and I quote, says, At no time during his first appeal did the defendant challenge the reasonableness of his sentence. Our ruling today applies only to defendants in Combs' particular situation. And that obviously isn't what happened here. So it sets Combs aside. Combs is not binding here. It's limited to its unique circumstances. That's certainly my position. And I think it's important for this Court to go back not only to language that says in the initial panel opinion in this case by this Court that there should be an amyline remand. The opinion also specifically said we want to send this back. The government's argued it's an unreasonable sentence. We want to send this back for the Court to consider whether the 3523A factors should be considered in a way that would direct the Court to impose a different sentence. The Court didn't do that. The Court didn't have a resentencing hearing at all. Has the defendant personally advised the Court that he's considered this pretrial report that imposed this sentence and all of the factors in it and what he wanted to say to the judge? Did he have that opportunity? Did the defendant have the opportunity to speak to the Court at the initial sentencing?  No. On the last remand? No. We didn't. The course in this case is — Is it your position that you must have that opportunity? Well, our position is actually we believe this is an unreasonable sentence. We believe it would be very useful for this Court to say — It may be unreasonable, but does the defendant have an opportunity to say that to the Court before a sentence is imposed? The — Has he ever had that opportunity since it's been in the Ninth Circuit? No. This case is at some odds with what this Court said in Montgomery, which said on an amyline remand, the parties need an opportunity, at least in writing, to say to the Court, here's why there should or should not be a resentencing hearing. That didn't happen here. But as Judge Pius has noted, we've been on a bit of a yo-yo here, and this is one of the few government appeals pending in this Court at this time of a below-the-guideline-range sentence. The record is relatively well developed. We know he's a recidivist. We know he was convicted of a major fraud. We know from the offer of proof filed by the government that he not only made false statements to a bank, but he also failed to disclose stock options worth $445,000. This is a big fraud case, and it follows — You know, in your 28J letter, you alluded to the fact that the — when the Court — when we sent it back for the amyline assessment, in your 28J letter, you alluded to the fact that the Court didn't call for supplemental — give the parties an opportunity to brief, but you didn't ask us just to simply remand it to Montgomery for that part of the amyline process to take place. Now, was there a reason why you did that? Well, that's what — You know, Your Honor, it's part and parcel of the argument that I've been trying to make as far as — You just want to get this back. I believe that this Court could help practitioners and district courts a great deal if it took the facts in this case and said, here are the 3553A factors. This is why this is an unreasonable sentence, because we're all — we're two years post-Booker, and Miniweather is the only case involving a government appeal, and the — and practitioners and district courts really — Well, you know, see, the problem with that is, if you go back to the original sentence, you know, it was in that sort of limbo. The district — you can construe what happened here in several different ways. One, it may be — it may be that the district court thought that on the factual — you know, on the amount of loss, that in light of Blakely and in light of the Ammaline three-judge opinion, that he couldn't make findings of fact regarding the amount of loss. And so as a matter of law, he just wouldn't consider that. Okay? So that might — so if you're into the world of reasonableness here, as we know under Cantrell, the first step is to look to see whether the guidelines were appropriately calculated. And they were not. And they may not have been appropriately calculated. So what that calls for, if you take that method of analysis, at least as far as I know — Is a remand. Is a remand to start all over from the get-go. Well, and certainly, the government seeks a remand. But the record in this case is really, I think, different than some of the other cases where this Court has said we've got to look at that. If we assume that we were to agree that the $445,000 is admitted for sentencing purposes and must be sort of the floor that the district court applies, how could we possibly do that without remanding it? Well, you've got a record that was created at the time of the initial — But we don't sentence. And we've been down this road before where we sent it back. The Court didn't have a resentencing hearing. At that time, the Court was told, balance the 3553A factors. The government would say, A, it should be remanded. B, at that time, the guidelines should be calculated. But this Court at this time can take a look at the proffer in this case that's filed and that the defendant did not object to, and said, here is the history. Here's the criminal history. Here's the loss in this case. And this Court could certainly say, a sentence that doesn't involve any incarceration for a major recidivist fraudster with this amount of money, a sentence of no incarceration cannot be reasonable. That's what Judge Kleinfeld said in the initial panel opinion in his dissent. But the district court really hasn't looked at the 3553A factors. With the amount of loss. Unless you construe what the district court did on the Ameline remand as having engaged in that process. Well, and I – there certainly isn't anything in the record that would indicate that. But it was all in the record. All those things were argued at the time of the initial sentencing. That, as you say, Blakely – it's a post-Blakely proceeding, but the government said there isn't any possible way that by ignoring the loss and ignoring the fact that there were multiple victims, that you can end up with a just sentence. So that's all – if you read the sentencing memos and take a look at the transcript and the offer. We did. I did. You know, that – As much as I could have in the record here, I did. So I'm down to a minute, and I probably better reserve the rest of my time. Okay. We'll hear from Mr. Rhodes. Good morning. I'm John Rhodes from the Missoula Office of the Federal Defenders of Montana. I represent Duncan Edwards. At the outset, I want to correct something that the government just said. They said that this case is somewhat at odds with Montgomery. Montgomery says that before a court, a district court, issues its amyline remand response to this court to help this court determine the plain-air review, that written submissions from the party have to be solicited by the district court. That did not happen here. So I don't think either party can say that this case is somewhat at odds with Montgomery. The fact is that if this court applies Montgomery without engaging in harmless air review, then this case should be sent back so that the district court solicits written submissions from the party and then proceeds from there. That's one possible outcome. So it sounds like both of you want a remand, but in somewhat different form. Yes. I think what the government is trying to do is recast the first remand in this case as a remand for a full resentencing, and the order is clear. It says, pursuant to amyline, this case is remanded. And the government is trying to conflate that into something more because it's not happy with the result. And so, yes, I agree that we believe if Montgomery is applied, absent harmless air analysis, that this case has to go back for written submissions from the party. Let me ask you this, though. Let's assume that we just we send it back pursuant to Montgomery. District court judge solicits the views, says, ah, same sentence. You're back. You're back. Presumably, the government would appeal. And it would say what would the government be arguing at that point? Help me out. I think they would be trying to distinguish combs in the way that they've suggested to this court. Okay. Now, comb seems to be, you know, the panel very carefully said it's limited to the unique circumstances of this case. See, what's interesting here about this particular case is the government all along has been trying to get the Ninth Circuit to address the district court's determination that it couldn't consider the evidence showing what the amount of loss was. And I believe that's what the government did already on the remand. Well, why isn't the district court required to consider the amount that was admitted by your client saying, in response to the offer of proof, there's nothing in that that is erroneous, that is, agreeing on the record that the offer of proof was factually correct and it included an amount of loss of $445,000? You're using specific words that we would strongly disagree with. My client never admitted. I don't believe he even agreed. All he did was acquiesce. And I think there's a distinction in the case law as we've briefed to the court, and I will actually file a 28-J letter in a recent Fourth Circuit case that basically said, we – I have no objection to what they said, that that's not enough in terms of becoming a stipulation or admission. There wasn't a stipulation for purposes of calculating the guidelines with respect to the amount of loss. No, Your Honor. Is that right? No. No. But does that necessarily mean there's no factual admission? Yes. There was not a factual admission in the legal, technical sense of the word, and that's what we're dealing with here because it's obviously very significant. But doesn't that suggest, though, I mean, the way I looked at it, it seemed to me that if the district court had not been of the view – I said – the panel opinion in Ameline said, you know, you have to allege facts in the indictment and prove them beyond a reasonable doubt to a jury. And so the district court said, well, that wasn't done here. I can't consider these facts. I can't consider the government's offer of proof. And it's just off the table. Now we know, after Booker, that the district court can make its own findings in the advisory world of the guidelines, and we know that the government believes they've got evidence to show that the amount of loss was $400,000-plus. Why in that circumstance shouldn't the government be given the opportunity to lay that all out? Well, if there's a remand pursuant to Montgomery, I assume that's what the government will do in its resolution. No, not necessarily because the difference is under Montgomery, as I understand it, the only thing that the parties can do is argue about whether the original sentence would be the same or should be the same, but no evidence is presented. It's a matter of argument. I think, as I understood Judge Paia's question, it is why should this not be a remand on an open record to allow the district court for the first time, knowing that it has the discretion to find facts in aid of sentencing, to be allowed to do that, which has never happened in this case? Three responses. First, I just went through a Montgomery written submission to the district court, and you can submit in writing your case to explain to the court why it should convene a resentencing hearing. Second, the district court has received all that information at the original sentencing. As the government's explained, all that information was in the PSR. It was also able to urge that to the district court at the sentencing hearing. So it's not as though the government hasn't had that opportunity. And third, this was an Ammaline remand, and the government's trying to say it was a remand for full resentencing. That was the case in the Perez case, which the government also cited in the 28-J letter. Perez was a little bit different, but — It's a lot different, yes. One other thing that was odd about this case, you know, Ammaline arose in the context of a defendant who didn't raise a Sixth Amendment challenge, and we came up with a procedure to deal with the plain error review analysis, the third prong of plain error. Okay. Now, the government here, although they don't have a Sixth Amendment right here, they have a statutory right to appeal the district court sentence. They had tried — they tried to do that. They tried to do that. They filed an appeal. And we then overlay that with the Ammaline procedure that existed for defendants, and we send it back. And the whole thing — the thing is just a mess, as far as I can tell. Yes. I just can't get over it. You should try explaining it to clients. Yes. I also wanted to point out, with respect to Combs, I realize that the panel was very careful, at least the two majority judges, in saying we are limiting it to Mr. Combs' situation. But if you look at the reasoning, the reasoning isn't fact-specific.  know is sent back to the district court to determine whether substantial rights were affected, whether plain error has been established. And what that means is the district court has to inform this court whether there would be a materially different sentence, now knowing that the guidelines are advisory. And under that framework, what Combs says is once the district court informs this court that the sentence would be the same, pre- or post-Booker, that all the court has to do. In Combs, the defendant tried to raise new issues that had not been raised before. So, you know, stop and think about it for a minute. If the defendant had, on appeal, raised a number of issues challenging the guideline calculation, we send it back for an amyline remand on the Sixth Amendment question. The question was simply to ask whether or not the sentence would be any different. Right? But in the looking in the background back there was still his original challenge to the sentencing guidelines. And then we know later on from Judge Graber's opinion in Cantrell that when you get to reasonableness review, the first step in the analysis is to go back and see if the guidelines were appropriately calculated as part of the first inquiry into whether the sentence is substantively reasonable. If there's an error in the guideline calculation under Cantrell, you send it back for correct determination of the guidelines. And then when that's all done properly, then you come back and you ask the question, was the sentence reasonable? And, you know, so you've got to be careful about what you do with Combs. Well, that's why the government's request to get to reasonableness review is not proper. A, this was an amyline remand, and B, in terms of the district court being fully informed of the government's argument, which I believe it already has been because that's the government presented its argument through the PSR and at the sentencing hearing. But if the government wants to fully inform, if there's more to tell the district court that can influence the calculations, that's why a Montgomery remand would be appropriate because the government can make written submissions, perhaps catch the attention of the district court. It'll say, maybe I should set a resentencing hearing. And then the government can come in and unload its barrels. Otherwise, if the court refuses to set a resentencing hearing, the government can appeal from there. And so in terms of reasonableness, if there's a concern that the district court hasn't heard the government's case, then that's why the Montgomery remand is extra appropriate, although I believe the government fully presented its case at the original sentencing. I see that my time is up. As I stated to the court, now that the government's raised Montgomery, I believe that the appropriate resolution is for this court to remand this case to the district court pursuant to Montgomery with the instruction that the district court solicit written submissions from the party to determine whether or not the district court will set a resentencing hearing or alternatively issue an order that its decision would not be different post-Booker. Thank you. Thank you. Mr. Mercer, you have a little bit of rebuttal time remaining. Thank you, Your Honor. The defendant has noted that this is an amline remand and the government wishes to draw the court's attention to the language at the end of the opinion, which states, moreover, we believe that the orderly development of the law under 3553A2 would be furthered by the district court's addressing the reasonableness issue in the first instance. So I think it was very clear that this was more than merely an amline remand. They expected the court to do that balancing test. As to the offer of proof, the excerpt's a record, page 57, the government's excerpts. After the offer of proof was read, the court said, did you hear what the government says you could prove on each of the counts in each of the cases? Yes, I did. Anything that you heard that you thought was wrong or that you disagreed with, no, sir. So I think it's pretty close to an accurate recitation of what happened and the proof that the government would have had had we gone to trial. But you've been given the opportunity in a sentencing hearing, you told the court what you thought you could do, what you thought you could show. Certainly. And we have not had that opportunity in this post-Booker environment. But as I was arguing initially in terms of this Minneweather-Booker line of cases, the fact that we have Minneweather out there with a very different factual situation without a defendant, without a criminal history, without the kind of magnitude of fraud in two separate instances, it would be extraordinarily helpful for added clarification for both the practitioners and the district court. And on Combs, there are all sorts of different reasons, but I think Combs really isn't applicable here. It's not just that the government in Edwards argued the 35 to 38 factors in both before the district court and the initial appeal, but the guidelines were calculated in Combs. In fact, at 1295, the panel's opinion notes that the sentence was at the low end of the guideline range. We didn't have that here. We had it within the guideline range sentence in Combs. We certainly didn't have that here. And in Combs, the court directed the district court in Edwards, we had the language about addressing reasonableness under 3553A, which did not exist in Combs. So the government seeks remand and an opportunity for a full resentencing. Thank you, counsel. The case just argued is submitted. And we appreciate very much the arguments of both parties. That brings us to United States v. T.
judges: Beezer, Graber, Paez